IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

EOD
04/14/2011

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **CHARLES D. DeLEON, JR.** | § | Case No. 09-10310 |
| xxx-xx-7071 | § | |
| | § | |
| Debtor | § | Chapter 7 |

| | | |
|---|---|---|
| JOHN GILBERT and | § | |
| BRENDA GILBERT | § | |
| | § | |
| Plaintiffs | § | |
| | § | Adversary No.  09-1010 |
| v. | § | |
| | § | |
| CHARLES D. DeLEON, JR. | § | |
| | § | |
| Defendant | § | |

## **MEMORANDUM OF DECISION**[1]

This matter came before the Court for trial of the complaint asserted by the Creditor-Plaintiffs, John and Brenda Gilbert ("Plaintiffs"), which seeks a determination of whether a debt allegedly owed to them by the Defendant-Debtor, Charles D. DeLeon, Jr. ("Debtor") is excepted from discharge pursuant to 11 U.S.C. §523(a)(6).  Consolidated for trial purposes was the Debtor's Objection to Claim No. 2 through which the Plaintiffs asserted the Debtor's liability for the debt addressed by the Plaintiffs' §523(a)(6) complaint.  At the conclusion of the trial,[2] the Court took the matter under advisement.

---

[1]This Memorandum of Decision is not designated for publication and shall not considered as precedent, except under the respective doctrines of claim preclusion, issue preclusion, the law of the case or as to other evidentiary doctrines applicable to the specific parties in this proceeding.

[2]  The trial of this matter was consolidated with the complaint asserted in adversary proceeding no. 09-1009 involving the same parties.

This Memorandum disposes of all issues pending before the Court.[3]

## Factual And Procedural Background

For many years, W.C. (Sonny) and Elizabeth "Liz" Gilbert were siblings who owned a 730-acre ranch in western Jefferson County. For some 25 to 30 years, the Debtor-Defendant, Charles DeLeon, Jr., was employed by the Gilberts at the Gilbert Family Ranch. He lived adjacent to the Ranch and had primary responsibility for its maintenance as the ranch foreman.

Upon the subsequent deaths of the Gilbert siblings, ownership of the Gilbert Family Ranch was ultimately conveyed to one of the Plaintiffs, John Gilbert, III,[4] a Houston architect, upon the settlement of certain litigation with the decedent's estate of Elizabeth Gilbert-Fortune wherein Gilbert had challenged the legitimacy of her last will and testament. Thus, to the extent that they thereafter frequented the Jefferson County ranch, the Plaintiffs, John Gilbert, III and his wife, Brenda Gilbert, became "neighbors" of the Debtor in 2003.

Prior to that time in 2000, the Debtor had acquired access rights to a certain 25-foot wide tract of land from its then-owner, Griffin Land and Timber Products, L.P.,

---

[3] This Court has jurisdiction to consider the complaint pursuant to 28 U.S.C. §1334 and 28 U.S.C. §157(a). The Court has the authority to enter a final judgment in this adversary proceeding and issue a final order regarding the claim objection since each constitutes a core proceeding as contemplated by 28 U.S.C. §157(b)(2)(B), (I) and (O).

[4] The father of the Plaintiff, John Gilbert, III, was a first cousin of Sonny and Liz Gilbert.

pursuant to a certain Road Use Agreement.[5] The Agreement, which allowed the Debtor to access a non-contiguous tract of real property that he owned adjacent to his home, provided to the Debtor "the free, uninterrupted use, liberty and privilege of passage on a non-exclusive basis for ingress and egress and roadway purposes . . . across that twenty-five foot (25') wide portion of land."[6] It prohibited the Debtor from cutting any timber from the roadway except as authorized by the owner and imposed certain maintenance obligations. The Debtor subsequently conveyed his interest under the Road Use Agreement to his mother, Esther Ruth Hudson, but continues to utilize its benefits as her invitee. Ownership of the tract burdened by the Road Use Agreement was subsequently conveyed by Griffin Land to the Plaintiffs and adjoining neighbors, John and Brenda Gilbert.

On an unspecified date prior to the filing of the Debtor's voluntary petition, Brenda Gilbert was at the Gilbert Family Ranch alone. Upon seeing a Jeep pass on her property near her home, she investigated and observed a group of men on the tract burdened by the Road Use Agreement. The five-man group included the Debtor and his brother, Cardell DeLeon. She also saw a deer stand, the opening of which faced in the general direction of her home. She also observed a deer feeder nearby. She immediately

---

[5] Plaintiffs' Ex. K.

[6] Id.

called a constable to complain about the trespass against her property. By the time the constable arrived, the men had departed.[7] There were no shots fired. Indeed there is no evidence that any of the men were in possession of any weapons. At some later point through subsequent litigation by and between the Gilberts, Cardell DeLeon and the DeLeons' mother, the deer stand was removed and stored on the Debtor's property. There is little, if any, evidence that the Debtor was responsible for the creation and placement of the deer stand or feeder. The Debtor specifically testified that he was not present when these devices were installed. The Debtor speculated that they likely belonged either to his brother, Cardell, or to Cardell's son.

After the filing of the Debtor's voluntary petition for relief under Chapter 7 on June 12, 2009, the Gilberts filed an unsecured proof of claim for "at least $5,000.00" without further documentation, to which the Debtor promptly objected.[8] The Plaintiffs subsequently initiated this adversary proceeding in which they assert that the $5,000 claim arose from this asserted violation of the Land Use Agreement and that such debt should be declared non-dischargeable as a debt arising from a willful and malicious injury under 11 U.S.C. §523(a)(6).

---

[7] The evidence establishes that the constable went to the Debtor's home and issued a trespass warning to the Debtor, who was the only person remaining in the immediate area upon the constable's arrival.

[8] The parties agreed to defer the hearing on the claims objection until the time of trial of this adversary proceeding.

-4-

**Discussion**

The Plaintiffs claim that the asserted trespass upon their property by the Debtor and the activities associated with that alleged trespass, including the cutting of certain unidentified trees, establish the foundation for the allowance of their claim. As was stated by this Court in *In re Kilgore Meadowbrook Country Club, Inc.*, 315 B.R. 412 (Bankr. E.D. Tex. 2004), the burden of persuasion under the bankruptcy claims procedure always lies with the claimant, who must comply with FED. R. BANKR. P. 3001 by alleging facts in the proof of claim that are sufficient to support the claim. Whether or not that claim is determined to constitute *prima facie* evidence of the validity and amount of that claim under FED. R. BANKR. P. 3001(f), once an objection is filed to that claim that facially negates at least one of the allegations essential to the legal sufficiency of the claim,[9] the burden of going forward with the evidence shifts back to the claimant to sustain its ultimate burden of persuasion to establish the validity and amount of the claim by a preponderance of the evidence. *Id.* at 418. In the present case, any *prima facie* validity that might otherwise have attached to claim #2-1 filed by the Plaintiffs was rebutted by the Debtor. Hence, the Plaintiffs must bear the burden of persuasion to establish the validity of their $5,000+ claim by a preponderance of the evidence.

To recover for damages for trespass under Texas law, "a plaintiff must prove that

---

[9] Such probative evidence might include the production of specific and detailed allegations that place the claim into dispute; the presentation of legal arguments based upon the contents of the claim and its supporting documents; or through pretrial pleadings, such as a motion for summary judgment, in which evidence is presented which brings the validity of the claim into question. *Kilgore Meadowbrook Country Club, Inc.*, 315 B.R. at 417-18 (citations omitted).

(1) the plaintiff owns or has a lawful right to possess real property; (2) the defendant entered the plaintiff's land and the entry was physical, intentional, and voluntary;[10] and (3) the defendant's trespass caused injury to the plaintiff." *Randall Noe Chrysler Dodge, LLP v. Oakley Tire Co.*, 308 S.W.3d 542, 548 (Tex. App. – Dallas 2010, pet. denied) (*citing Wilen v Falkenstein,* 191 S.W.3d 791, 798 (Tex. App. – Fort Worth 2006, pet. denied)). "In cases of trespassory damage to trees, the measure of damages is the diminution of the value of the land or, under some circumstances, the value of the trees destroyed or removed." *Id.* at 799.

Dealing first with the damages allegedly arising from cutting timber on the designated right-of-way, the Plaintiffs offered no proof that the Debtor violated the Land Use Agreement by cutting timber. The Debtor did admit on his own direct examination that he had previously cut some smaller trees, scrub brush and other undergrowth in order to clear the right-of-way, and he asserted his right to do so under the general maintenance provisions of the Land Use Agreement. However, that small quantum of proof fails to establish that timber was cut in violation of the Agreement. As one Texas court observed,

> The word 'timber' has been generally defined as meaning growing trees suitable to be used for the construction of building, tools, utensils, furniture, fences, ships, etc. This concept of timber distinguishes it from saplings, and undergrowth, fruit trees, and trees suitable only for firewood or cordwood, or for decoration. ... Growing trees, valuable for shade or ornamentation, or

---

[10] The intentional aspect of this action "requires only proof of interference with the right of possession of real property; the only relevant intent is that of the actor to enter the property." *Wilen*, 191 S.W.3d at 798.

>   for fruit, are not considered to be timber in the generally accepted use of the word.

*Melder v. Phillips Pipe Line Co.*, 539 S.W.2d 208, 210 (Tex. Civ. App. – Austin 1976, writ ref'd n.r.e.).

Even if it could be established that the cuttings constituted "timber," the Plaintiffs offered no proof as to specific types of trees severed. The Plaintiffs wholly failed to present any evidence with regard to any reduction in the market value of their land as a result of the Debtor's activities or that established the intrinsic value of the removed trees. Thus, the Plaintiffs have failed to sustain their burden of proof regarding the existence of any claim against the Debtor arising from any cutting activities within the prescribed real property.

The Plaintiffs further failed to offer any evidence of any injury suffered as a result of the Debtor's presence on their property. Notwithstanding the fact that the Debtor likely strayed from the strict confines of the land upon which he was authorized to enter, the Plaintiffs have not demonstrated that they sustained damages as a result of any such violation. In fact, the precise characterization of the damages supposedly suffered as a result of the trespass was never clearly identified. One might characterize some portions of Ms. Gilbert's testimony as implying the infliction of some type of emotional distress as a result of the asserted trespass, though such references were anything but specific. Assuming but without deciding that Texas law would allow a recovery for the intentional infliction of emotional distress arising from a trespass (although the Plaintiffs have not

identified any such jurisprudence), it is widely recognized that to receive such a recovery for emotional distress under Texas law, a plaintiff must generally prove that: (1) a defendant acted intentionally or recklessly; (2) the conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the emotional distress that the plaintiff suffered was severe. *City of Midland v. O'Bryant*, 18 S.W.3d 209, 216 (Tex. 2000) (*citing Brewerton v. Dalrymple*, 997 S.W.2d 212, 215 (Tex. 1999). For conduct to be considered "extreme and outrageous" in this context, it must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id*. at 217 (*citing Mattix-Hill v. Reck,* 923 S.W.2d 596, 597 (Tex. 1996). Proof of any anxiety felt by Ms. Gilbert arising from the trespass episode falls woefully short of this prescribed standard for recovery.

Accordingly, the Court finds that the Plaintiffs have failed to satisfy their burden of establishing, by a preponderance of the evidence, the amount and validity of their $5,000 proof of claim against this estate. Consequently, the objection filed by the Debtor, Charles E. DeLeon, Jr., to that claim must be sustained and Claim #2 filed by the Plaintiffs, John and Brenda Gilbert, is hereby denied in its entirety.

Since the Plaintiffs have failed to establish the existence of any debt arising from the trespass episode, there can be no debt that should be excepted from discharge under 11 U.S.C. §523(a)(6). However, from an abundance of caution and to provide assistance to any court conducting an appellate review, the Court shall address the merits of the

Plaintiffs' adversary complaint.

*Nondischargeability Under §523(a)(6):*
<u>*Debt Arising from Willful and Malicious Injury*</u>

Had a debt been established under the evidence presented, the Plaintiffs' Complaint contends that such a debt should be excepted from discharge as a debt arising from a willful and malicious injury inflicted upon them by the Debtor-Defendant. Section 523(a)(6) of the Bankruptcy Code provides that:

> (a) A discharge under Section 727 . . . of this title does not discharge an individual debtor from any debt . . .
> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

In *Kawaauhau v. Geiger*, 523 U.S. 57 (1998), the United States Supreme Court significantly narrowed the scope of debts that could be deemed nondischargeable under §523(a)(6). The *Geiger* decision clearly requires that an actor inflict a deliberate or intentional injury, not merely that an actor take a deliberate or intentional act that leads to injury. As subsequently interpreted by the Fifth Circuit, a recovery under §523(a)(6) for a "willful and malicious injury" now requires proof that such injury arose from a deliberate and intentional act by a debtor that was inflicted under circumstances evidencing either: (1) an objective substantial certainty of harm; or (2) a subjective motive to cause harm. *Miller v. J. D. Abrams, Inc. (In re Miller)*, 156 F.3d 598, 606 (5th Cir. 1998), *cert. denied, Miller v. J.D. Abrams, Inc.*, 526 U.S. 1016 (1999); *see also Caton v. Trudeau (In re Caton),* 157 F.3d 1026, 1029 (5th Cir. 1998).

Thus, even if an injury had been established under the evidence, the Plaintiff failed to introduce any evidence from which this Court could properly conclude that any such debt should be excepted from discharge as arising from a willful and malicious injury under §523(a)(6). There was no showing that the Debtor entered upon the Plaintiffs' property with the specific subjective intent to injure the Plaintiff, nor does any circumstance even raise an inference that an objective substantial certainty of harm existed from the Debtor's purported activities. Indeed the evidence fails to show that any harm occurred at all. Because the Plaintiffs have failed to demonstrate the existence of a deliberate or intentional injury inflicted by the Debtor, and have additionally failed to demonstrate that the actions of the Debtor created an objective substantial certainty of harm to them, the Plaintiffs have failed to sustain their burden of proof that any purported debt arose from a "willful and malicious injury" as contemplated by §523(a)(6).

Because the Court concludes that the Plaintiffs have failed to prove this cause of action by a preponderance of the evidence, judgment must be rendered for the Debtor in this action. This memorandum of decision constitutes the Court's findings of fact and conclusions of law[11] pursuant to Fed. R. Civ. P. 52, as incorporated into adversary proceedings in bankruptcy cases by Fed. R. Bankr. P. 7052 and into contested matters in bankruptcy cases by Fed. R. Bankr. P. 9014. An appropriate judgment, and

---

[11] To the extent that any finding of fact is construed to be a conclusion of law, it is hereby adopted as such. To the extent any conclusion of law is construed to be a finding of fact, it is hereby adopted as such. The Court reserves the right to make additional findings and conclusions as necessary or as may be requested by any party.

corresponding order sustaining the Debtor's claim objection, shall be entered which are consistent with this opinion.

Signed on 04/14/2011

THE HONORABLE BILL PARKER
UNITED STATES BANKRUPTCY JUDGE